## Continental National Bank *versus* Draper.

Under the Act of March 16th 1869, entitled "An act relative to fraudulent debtors," real estate cannot be attached.

March 17th 1879.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas of *Schuylkill county :* Of January Term 1878, No. 15.

On the 2d of February 1877, the Continental Bank, of Boston, by Charles F. Smith, its cashier, made affidavit, setting forth that John W. Draper was indebted to them in a sum exceeding $100, upon promissory notes, aggregating $9700, and that said Draper had assigned and disposed of his property, namely, his dwelling-house in the borough of Pottsville, with intent to defraud his creditors.   They, at the same time, filed their bond, in pursuance of the Act of Assembly of March 16th 1869 : Purd. Dig. 53, pl. 71, and a *præcipe* for a writ of attachment in conformity with said act.   The attachment issued, and on the 9th of February 1877, the sheriff attached a lot and dwelling-house in the borough of Pottsville, and returned the writ *non est inventus* as to John W. Draper.   On the 19th of March 1877, the defendant moved to have the writ quashed for matters apparent upon the record, and, after argument, upon the 3d of September 1877, the opinion of the court was filed, quashing the writ, on the ground that the Act of 1869 did not authorize an attachment of real estate.

The court, Walker, J., in the opinion said :

" In this case a writ of attachment under the Act of 1869, was issued upon a judgment of $9331.89, originally obtained in Massachusetts by the plaintiff against the defendant, and entered up in the Court of Common Pleas of Schuylkill county, to March Term 1877.   A house and lot of ground in the borough of Pottsville were attached, and this rule upon the part of the defendant is to quash said writ.

" The writ was issued under the provisions of the Act of 1869, and the defendant's real estate is attached.   Can this be done, or is the act confined to personal property solely ?   We do not deem it necessary to discuss this question, as all the law judges of this court have given the subject a full and careful investigation, and have unanimously come to the conclusion that the provisions of the act were intended solely to apply to personal property and not to real property.   Rule made absolute."

The bank took this writ, assigning this action for error.

*Fergus G. Farquhar* and *Samuel Dickson*, for plaintiff in error. —The court below construed the word "property" as it is found

in the several sections of the Act of 1869, to mean only personal property ; in other words, they have added to the Act of Assembly in every place where the same speaks of "property" the word "personal." Is such an interpretation of the act consonant either with the spirit of the act itself or with the remedy which it proposes to give for the protection of creditors against fraudulent debtors? In the absence of any positive limitation of the right of attachment, real estate may as well be attached as personalty : Drake on Attachments, sect. 233 ; Isham v. Downer, 8 Conn. 282. There was nothing in the Act of 1705 providing for the sale of land, but this court held that land was to be treated as a mere chattel for the payment of debts: Schacklett and Glyde's Appeal, 2 Harris 329 ; Ludlow v. Bingham, 4 Dall. 44 ; McClanachan v. McCarty, 1 Id. 376. If the practice was right under the Act of 1705, where there is no mention of land, why is it not in this case, where the word " property" is used, which includes everything, and embraces both realty and personalty.

If this limitation of the word "property" be admitted as a proper construction, then the remedy provided is a very imperfect one. It would permit a man owning real estate to commit any fraud by disposing of his real estate, and leave his creditors without a sufficient and prompt remedy.

It will also be seen that the Act of Assembly of 16th March 1869, speaks of a "lien" acquired. This word used in this connection must certainly have been used in contemplation of an attachment of real estate, for where personalty is attached, the property itself is taken into the custody of the court by its officer, and under such circumstances the word "lien," in legal phraseology, has little meaning.

*D. C. Henning* and *James Ryon*, for defendant in error.—The remedy provided, is to give the attaching creditor a lien for his claim upon such property as may be removed out of the jurisdiction of the court, or be concealed, or which may be assigned, disposed of, or removed with intent to defraud creditors. Now, as no provision is made in the act for the seizure of real estate, in express terms, to include it by necessary implication, it must be capable of being disposed of by the debtor, in one or other of the ways provided in the Act of Assembly, to the injury of creditor, and in such manner as leaves him without a remedy.

As real estate is capable of neither removal nor concealment, the act of the debtor, to give jurisdiction, must be to assign or dispose of it. As personal property is movable, and may attend the owner wherever he may go, and title thereto may so readily be acquired and lost by simple delivery of possession, and the goods may not be forthcoming after litigation, it is necessary that a speedy remedy be given the creditor, and to be effectual he must make a manual seizure

of the goods. But it is not so with real estate; if assigned or disposed of with intent to defraud creditors, it can be followed by the creditors into the hands of any person in whose possession it may be found; and the proceedings under the writ of foreign attachment would be ample notice to third parties.

Then, too, the act makes no provision for the seizure of real estate under a writ issued in pursuance thereof; nor does it make any provision by which third parties may have notice of the lien of the attachment.

Mr. Justice GORDON delivered the opinion of the court, May 7th 1879.

We think with the learned judge of the court below, that the Attachment Act of March 17th 1869 (Br. Purd. 53, pl. 71), was not intended to embrace real property. An examination of the act will make this obvious. In the first place, this writ is issuable upon the affidavit of the creditor that the debtor or debtors "is about to remove his, her or their property out of the jurisdiction of the court on which the attachment is applied for, with the intent to defraud his, her or their creditors; or that said party defendant has property, rights in action, or interest in any public or corporate stock, money or evidences of debt, which he, she or they fraudulently conceal; or that the said party defendant has, or have assigned, disposed of, or removed; or is about to assign, dispose of or remove any such property, money, rights in action, interest in public or corporate stock, or evidences of debt, with the intent to defraud his, her or their creditors." In all this there is clearly no intent to embrace realty; the "property" spoken of, is such as may be removed or concealed, and hence; necessarily embraces only personalty. Real estate, not being susceptible of removal, and its conveyance in fraud of creditors being otherwise amply provided for, the legislature, in this act, made no provision against its disposition.

Turning to the second and third sections, which provide for the service and return of the process, we find that the sheriff is directed to attach "so much of the money, stocks, rights in action, evidences of debt, or other property of said party defendant, not exempt from sale upon execution, as will be sufficient to pay the debt demanded, with costs." Now it may be conceded that the words "other property" might be made to include land, and we might agree that such was the legislative intent, were it not that several difficulties oppose themselves to a construction of this kind. First, we have already seen that the statute in the preceding section, has attached the idea of mobility to "other property." Second, there are no provisions or directions for the attachment of real estate, as in the foreign and domestic attachment acts; and third, the language of the act precludes such a conclusion. An

inventory of the attached property is to be made and a copy thereof left with the defendant if he can be found within the county; but if he does not reside in the county, then, such copy is to be left "with the person in whose possession or care said property may be, or in whose hands it may be attached." We need scarcely say that the above-stated language can properly be applied only to personalty. But again, "it shall be the duty of the officer, serving such attachment, to take the property attached into his possession, *when the same is capable of manual seizure,* and when not the same shall be bound by such attachment, in the hands or possession of such party, from whom it is *due or owing, or whose duty it is to account for the same.*" This part of the act informs us definitely what may be attached. In the first place, it is something that the officer may take into his own possession by manual seizure; and, in the second place, if it is not capable of such seizure, then, it is something of a kind that may be due or owing or that is to be accounted for. The first embraces personal goods and chattels; the second, debts, obligations, stocks, &c., but by no stretch of the imagination can this language be made to embrace real estate, since of it there can be no manual seizure, neither is it a thing which may be due or owing or to be accounted for in the meaning of the act.

But, further, the defendant may retain the property, thus attached, by giving bond for its surrender, in as good condition as when attached, "to any officer having an execution against said defendant on any judgment rendered in said attachment in favor of the plaintiff." Language of this kind, we know, is applicable only to personal property; applied to real estate it is meaningless.

If, indeed, we were to deal with this act as Chief Justice GIBSON tells us the Act of 1705 was dealt with, we might make it cover realty. He says, (Schacklett and Glyde's Appeal, 2 Harris 326), "it is an undoubted fact that the framers of the Act of 1705 intended to exempt land from attachment; but as there was no reason for an exemption, as land was liable to execution as a chattel, and as the language of the act was not imperative, though its details were adapted to cases of garnishment, the courts made no distinction. Nor ought they to have done otherwise; at least they did not." In these days, however, this court can hardly make so free with a statute as to inject into it what may be thought to be an improvement, the clear intention of the law-making power to the contrary notwithstanding.

　　　The order of the court below quashing the attachment is affirmed.